IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JAMES GORDON GIBSON, ) | C/A No. 2:13-CV-03134-MGL-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| DIRECTOR HOLLY SCATURO, ) | REPORT & RECOMMENDATION |
| SHERRIE WINSTON-WOOD, CYNTHIA ) | OF MAGISTRATE JUDGE |
| HELFF; SHEILA LINDSAY, CHRIS ) | |
| JENKINS, LT. JACOBS, LARRY WERTS, ) | |
| BENJAMIN WILLIAMS, WASHIGNTON, ) | |
| JARVIS BORUM, AND ROBERT ) | |
| GAITHERS, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This is a civil action filed by a *pro se* litigant. The Plaintiff is currently in the custody of the South Carolina Department of Mental Health ("DMH") pursuant to the South Carolina Sexually Violent Predator Act, S.C. Code Ann. § 44-48-10 through § 44-48-170 ("SVPA"). This matter is before the court on Defendants' Motion for Summary Judgment. (Dkt. No. 50.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The Plaintiff brought this action on or about November 19, 2013. (See Dkt. No. 1.) The Plaintiff filed an Amended Complaint on March 20, 2014. (Dkt. No. 14.) On April 8, 2014, the district court dismissed the Department of Public Safety and DMH as defendants in the suit. (Dkt. No. 20.) The Plaintiff filed his "New Amended Verified Complaint for Declaratory Relief and Monetary Relief" ("Second Amended Complaint") on May 2, 2014. (Dkt. No. 24.) The

1

Defendants filed an Answer on June 24, 2014. (Dkt. No. 39.) The Plaintiff filed a motion for a preliminary injunction and temporary restraining order on October 16, 2014, and those motions were denied by the court on April 15, 2015. (Dkt. No. 63.) On November 7, 2014, the Defendants filed a Motion for Summary Judgment. (Dkt. No. 50.) By order filed November 10, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On February 12, 2015, the Plaintiff filed "Plaintiffs' Objection to the Defendant's Motion for Summary Judgmen [sic] on behalf of Defendants Scaturo, Helff, Lindsay, Jenkins, Jacobs, Werts, Williams, Borum, and Gaither." (Dkt. Nos. 60, 61.) On February 23, 2015, the Defendants filed a Reply. (Dkt. No. 62.)

## Alleged Facts[1]

The Plaintiff is civilly committed under the SVPA and housed at the Broad River Correctional Institute pursuant to a contract between DMH and the South Carolina Department of Corrections ("SCDC"). On April 13, 2011 at approximately 11:15 a.m., the Plaintiff's assigned cell, #220, was the target of a "shakedown" that lasted 35 minutes. During the shakedown some of his "papers, religious item, and papyri, along with several business papers and applications" were taken or destroyed. (Dkt. No. 24 at 2.) The Plaintiff was then instructed by Defendant Sheila Lindsay to remove excess magazines from his cell.[2] The Plaintiff then met with an attorney representing him in an unrelated matter. The attorney signed statements offering to take custody of the Plaintiff's personal items that Defendant Lindsay asked the

---

[1] Unless otherwise noted, the Alleged Facts are taken from pages 2-10 of the Second Amended Complaint (Dkt. No. 24)

[2] Defendant Lindsay is a Resident Advisor employed by the DMH. (Dkt. No. 50-4.)

2

Plaintiff to remove. The Plaintiff states he attempted to remove the excess magazines and books, but he could not comply because he was not given an 18 inch by 18 inch by 18 inch box as required by SCDC policy.

On July 25, 2011 at approximately 1:00 p.m., Defendant Lindsay and Defendant Larry Werts informed the Plaintiff he had thirty minutes to dispose of his excess property in his room.[3] Approximately five minutes later, Defendant Sherry Winston-Wood gave the Plaintiff a 12 inch by 12 inch by 12 inch box and instructed him to place all his treatment paperwork in the box and throw away all his other papers including legal paperwork.[4] The Plaintiff told Defendant Winston-Wood he had too much paperwork to fit in the box but was told he must comply. Defendants Lindsay, Chris Jenkins, Benjamin Williams, Washington, and Russell Gaither came to the Plaintiff's room and searched through his paperwork "destroying, tearing up, and/or throwing away almost everything."[5] (Dkt. No. 24 at 3.) The Plaintiff was given thirty minutes to go through his paperwork. Then Defendants Werts, Williams, Washington, Gaither, and Lindsay, along with another DMH employee came to the Plaintiff's room and asked what he was keeping. The Plaintiff stated he needed more time to sift through his legal files and treatment paperwork. The Plaintiff identified a stack of papers he had already gone through and identified them as his legal and treatment paperwork. The Plaintiff alleges Defendants Werts and Williams then told him to stand against the wall and threatened him. The Plaintiff alleges that Defendants Werts and Williams placed these papers in bags and threw them in the trash. The

---

[3] Defendant Werts is employed as a Public Safety Officer for the DMH. (Dkt. No. 50-13.)
[4] Defendant Winston-Wood was the "Program Coordinator/Policy and Procedures Manager." (Dkt. No. 24 at ¶52.)
[5] Defendant Jenkins is employed as a Behavioral Health Assistant. (Dkt. No. 50-14.) Defendants Williams and Gaither are employed as a Public Safety Officers. (Dkt. Nos. 50-10, 50-15.)

Plaintiff states the paper contained "legal document and case evidence, religious writings and ephemera, as well as many of [his] religious boo[k]s….legal referenced computer disks…and my ex-room mates [sic] legal file." (Id. at 4.)  The Plaintiff "begged" Defendant Werts to return some of the items, but Defendant Werts told him he should have put them in the box Defendant Lindsay gave him.

The Plaintiff walked out of his cell and was ordered to return by Defendant Williams. Defendant Williams pushed the Plaintiff into a chair and threatened to beat the Plaintiff "the way [they] beat…Shawn Robinson." The Plaintiff asserts Robinson was beaten because he is a member of the Roscrucian religious order.[6]  (Id. at 5.)  Defendant Werts and Williams then laughed and left the room with two trash bags full of the Plaintiff's property.

The Plaintiff was then ordered to sit outside his cell, which he states is the location of a public telephone.   The Plaintiff then attempted to call his lawyer.  Defendants Lindsay then told Defendants "Williams and Washington to assault Plaintiff for attempting to call his attorney." (Id. at 5.)  Defendants Williams and Washington then instructed the Plaintiff to hang up the phone and get on the floor.  Defendant Williams attempted to handcuff the Plaintiff and the Plaintiff held onto the handcuff.  (Dkt. No. 61 at 3 of 7.)  Defendants Williams and Washington then threw the Plaintiff to the floor and pinned him with a knee.  The Plaintiff alleges this caused "permanent head trauma, and further facial and brain trauma sustained assault from Laurens county [sic] detention center."[7] (Dkt. No. 24 at 5.)

---

[6] The Plaintiff declared his religious preference as "Christo-Pagan Rosicrucian under Eclectic Path as Seeker" on October 28, 2013.  (Dkt. No. 50-3.)

[7] The Plaintiff has not provided any medical evidence to support this claim.  At the time of the incident, the Plaintiff complained of rib pain, and x-rays showed no signs of injury.  (Dkt. No. 50-17.)  The Plaintiff did not make any complaints of head trauma, back injury or headaches at the time of the incident or since according to Jamel El-Shami's review of the Plaintiff's medical records.  (Id.)  Mr. El-

According to the Second Amended Complaint, Defendant Lindsay brought the following disciplinary charges against the Plaintiff as a result of these incidents:

1. Possession of Dangerous Contraband ['a paddle made of tongue depressor to use in the flower pot to turn soil, the alleged 'weapon.'][sic];
2. Wine Making Materials ['7 pieces of orange rind use to flavor tea, and 21 packets of sugar, also used for his tea'];
3. Operating a business ['Having a Approval Pen-Pal Account with Elite Prosoner's Services']; and;
4. Excess Unauthorized Property [Legal Files, Religious Items and Documents, Entrepreneur Magazine, Legal and Religious Books and Manuals. [sic].[8]

(Dkt. No. 24 at 5-6.) As a result of being convicted of these charges by the Behavior Management Committee("BMC"), the Plaintiff received 60 days in room lockdown, "loss of level" for 90 days, loss of "package privilege" for 90 days, loss of "Job/Work privilege," and loss of "Green Level canteen privilege while on Red Level." (Id. at 6.) The Plaintiff alleges that the BMC denied his "constitutionally required treatment." (Id.)

On January 8, 2013, the Plaintiff filed a motion in an unrelated lawsuit to be "Next of Friend" for another resident in DMH's custody under the SVPA.[9] On August 21, 2013, Defendants Lindsay and Williams ordered another "shakedown" of the Plaintiff's room. Defendant Williams "stalk[ed]" the Plaintiff's cell by walking by it at least three times. At the end of the shakedown, the searchers had not found any charges to bring against the Plaintiff. Defendant Washington came in the Plaintiff's room and said "Let me find something I can

---

Shami is a nurse practitioner employed by DMH that examined the Plaintiff after the incident. (Id.)
[8] According to the Outcome of the Behavior Management Committee Meeting, the Plaintiff was charged with "Contraband-Dangerous-Multiple, Contraband-Unauthorized Property-Multiple, Rules Violations-Excess Books, Insolence-Major-Multiple, Disobeying Direct Order-Multiple, Unauthorized Business Venture, Possession of buck-making supplies, Resisting Public Safety." (Dkt. No. 50-6.) The Outcome goes on to state that the Plaintiff "accepted consequences [without] incident," and his "only concern was that he had no intention of making buck." (Id.) The Outcome states the Plaintiff "admitted to all other infractions." (Id.)
[9] See C/A No. 3:13-CV-00073-CMC. The motion referred to by the Plaintiff in the case at bar is Dkt. No. 3. The motion was denied on February 11, 2103 in Dkt. No. 8.

charge you with." Defendant Washington found the Plaintiff's electric razor with guards missing and left. Then Defendants Williams, Jacobs, Borum, Jenkins, and Gaither entered the Plaintiff's room and intimidated the Plaintiff.[10] Defendant Lindsay then entered the Plaintiff's room and looked over his legal paperwork. Defendant Lindsay asked the Plaintiff why he had several other patients' legal paperwork in his room, and the Plaintiff responded that he typed legal papers and acted as "Next Friend" for other patients. Defendant Lindsay then confiscated "approximately 600 pages of active legal documents" pertaining to the Plaintiff's case against the Laurens County Detention Center, and three other patient's legal paperwork. (Id. at 8.) The paperwork included "30 Rosicrucian religious books, pamphlets" as well. (Id.)

On Thursday, August 22, 2013, the Plaintiff was ordered to his room and was held there over the weekend until he could appear before the BMC Monday morning. He was charged with "Possession of Dangerous Contraband" for the razor that was missing its guards and "Excess Unauthorized Property" for the legal files, religious documents and books, and copies of Entrepreneur magazine.[11] (Id. at 8.) The BMC found him guilty and ordered 14 days lockdown, "Loss of Level" for 90 days, loss of "package privilege" for 90 days, loss of "Job/Work privilege," and loss of "Green Level canteen privilege while on Red Level." (Id.)

The Plaintiff alleges he is not provided with envelopes and can only receive plain white #10 envelopes through packages. When he is denied package privilege, he cannot receive envelopes.

---

[10] Defendant Borum is employed as a Public Safety Officer for the DMH. (Dkt. No. 50-16.)
[11] These charges match the charges listed in the "Outcome of Behavioral Management Committee Meeting" submitted by the Defendants. (Dkt. No. 50-9.) Defendant Jenkins "Behavioral Observation Note" states that the confiscated items included "excess 'altered' magazines, 'altered' electric shaver, books and mail that belong to other residents, pictures of adolescent children, paper clips,….2 sets of disassembled headphones, and 'Dungeons and Dragon' materials." (Id.)

The Plaintiff alleges Defendant Winston-Wood has, through "written and unwritten custom, procedures, and policy" denied him religious materials, denied him sermons and services, and retaliated against him by treating him differently because of his race and religion. The Plaintiff alleges Defendants Winston-Woods, Lindsay, Werts, Williams, Gaither, and Jenkins retaliated against the Plaintiff for helping Shawn Robinson with his lawsuit, his religious beliefs, and having legal materials. The Plaintiff alleges these Defendants denied him access to courts and access to his religious materials.

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## Analysis

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d

7

653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983); see also Gomez v. Toledo, 446 U.S. 635, 540 (1983); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

### 1. Due Process Claims

"Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." McClam v. Chavez, C/A No. 3:05-CV-1795 TLW, 2006 WL 1663797, at *2 (D.S.C. June 8, 2006) (citing Youngberg v. Romeo, 457 U.S. 307, 324 (1982)). "Due process requires that the conditions and duration of confinement under the [SVPA] bear some reasonable relation to the purpose for which persons are committed." Id. (citing Seling v. Young, 531 U.S. 250, 265 (2001); Youngberg, 457 U.S. at 324. A plaintiff in the custody of DMH under the SVPA has a custody status similar to that if a pretrial detainee. McClam v. Sparks, No. C/A No. 3:08-CV-2025-TLW-JRM, 2008 WL 3070913, at *2 (D.S.C. Aug. 1, 2008).

To the extent that Plaintiff seeks to bring a § 1983 action simply for his lost property–be that tangible items or legal materials–that claim necessarily fails. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." However, the Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327 (1986); Pink v. Lester, 52 F.3d 73, 75 (4th Cir.1995). Thus, to the extent Plaintiff's claim for lost property sounds in negligence, that claims fails.

Furthermore, an intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is

available. Hudson v. Palmer, 468 U.S. 517, 536 (1984).  In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir.1986) (citing S.C. Code Ann. § 15-69-10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)). As such, any due process claim for deprivation of property fails.

While the Second Amended Complaint is not clear on what exact property was taken in the two incidents alleged by the Plaintiff, it appears to be wide ranging to include legal papers[12], chicken bones, a box of dirt, religious materials, a broken electric razor, and inappropriate pictures.  (See Dkt. Nos. 24; 50-2 ¶16-17; 50-10 ¶16.)  In his Objection to Summary Judgment, the Plaintiff "contends simply that" his legal papers and materials are necessary to this lawsuit and other litigation he has pending were taken.  Additionally, he contends that his religious materials were previously approved for him to possess and he feels he should have had a chance to be heard on why he should be allowed to keep them.

According the Defendant Scaturo, who is the director of the Sexually Violent Predator Treatment Program and a registered nurse, the excess papers were confiscated as a fire hazard, the chicken bones and box of dirt were confiscated as health and safety hazards, and the empty bags constituted a safety hazard. (Dkt. No. 50-2 at ¶17.)  Before any of his items were seized, the Plaintiff was given an opportunity to clean his room and place the papers he wanted to keep into a box.  (Dkt. No. 24 at 3.)  The Plaintiff does not make any specific allegations as to what religious materials were taken and what role they had in his religion.  Allegations such as these

---

[12] To the extent the Plaintiff claims to have a liberty interest in the legal papers of other patients at the facility, his claims fail.  The court is unaware of any authority the Plaintiff has to represent or aid other patients in their legal matters.

do not rise to the level of a violation of due process. See Fletcher v. Braxton, No. C/A. 7:04-CV-00374, 2005 WL 1654518, at *4 (W.D. Va. July 12, 2005) (holding failure to provide adequate religious materials does "constitute an atypical hardship sufficient to invoke the protections of the Due Process Clause"). The Plaintiff's due process claims for the loss of his property fail as a matter of law and this court recommends summary judgment be granted as a matter of law as to all the Defendants.

### 2. Equal Protection Claims

The Plaintiff's claims that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment based on his race, the Plaintiff is white, and his religion, the Plaintiff is a Rosicrucian. The Equal Protection Clause of the Fourteenth Amendment requires that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Fourth Circuit provided the test for analyzing equal protection claims asserted by prisoners in Morrison v. Garraghty, 239 F.3d 648 (4th Cir.2001). To bring an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Id. at 654. Courts must weigh four factors to determine if a prison policy is constitutional:

> (1) whether there is a valid, rational connection between the policy and the penological interest;
> (2) whether an alternative means of exercising the right remains open to prison inmates;
> (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and
> (4) the absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

Id. at 655. A "prison regulation [that] impinges on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests" and not an exaggerated response to a particular concern. Fulton v. Taylor, No. C/A No. 6:03-CV-3206-27, 2004 WL 3507898, at *12 (D.S.C. Oct. 20, 2004) aff'd, 133 F. App'x 73 (4th Cir. 2005) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In the case at bar, the Plaintiff has failed to make a *prima facie* showing for any violation of the Equal Protection Clause based on his race or religion, and this court recommends the Defendants are entitled to summary judgment as a matter of law. No evidence exists in the record to support the Plaintiff's equal protection claims regarding race. No evidence supports he was treated differently than anyone similarly situated or that any unequal treatment was the result of intentional or purposeful discrimination. The Plaintiff's claims regarding race are vague and include that various Defendants were "ordered to engage in targeted racial profiling and retaliation," "retaliated against plaintiff for racial reasons, (being white)," and "harass[ed], retaliat[ed] by denying [sic] Plaintiff to advance in SVP Treatment program in a manner equal to SVP resident due to race." (Dkt. No. 24.) These general and unsupported claims are not enough to survive summary judgment. The use of "buzz" words unsupported by fact is not sufficient to state a claim. See Smith-El v. Wexford Health Sources, Inc., C/A No. PJM-13-3870, 2015 WL 993483, at *2 (D. Md. Mar. 4, 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The Plaintiff has failed to produce any evidence in the record to satisfy the legal bar set in Morrison regarding his racial claims.

While more developed than his race claims, the Plaintiff's claims for violation of the Equal Protection Clause regarding his religion fail as a matter of law, and this court recommends the Defendants are entitled to summary judgment of these claims as well. The Plaintiff's claims

11

include that he was denied the ability " to order, receive Rosicrucian religious materials," "to participate in, or hold Rosicrucian…services," and that he was "assaulted" and "retaliated" against for being a Rosicrucian and not a Christian.  (Dkt. No. 24.)  The materials taken from the Plaintiff's room during the two incidents he cites in his complaint were removed because they were contraband and health, safety and fire hazards.  (See Dkt. No. 50-2.)  No evidence exists that the materials were removed as the result of intentional or purposeful discrimination.

The Plaintiff informed DMH he was a Rosicrucian on October 28, 2013.  (Dkt. No. 50-3)  Prior to that date, he identified to DMH as a Wiccan.  (Dkt. No. 50-2 a¶18.)  All of the events alleged in the Second Amended Complaint occurred while the Plaintiff was a Wiccan.  DMH allows religious services to take place for any religion that has at least three practicing members and can recruit a religious leader to attend the services.  (Dkt. No. 50-2 ¶12.)  DMH is not aware of three practicing Rosicrucian.  (Id. at ¶19.)  The Plaintiff cannot assert he was denied religious services when he had not informed DMH he was a member of the religion.[13]  DMH does not limit patients from practicing any religion individually subject to requirements concerning the penological interest, health, and safety.

As to his claims he was assaulted for being a Rosicrucian, the record contains no evidence that the Plaintiff's allegations of force being used against him have anything to do with his religious beliefs.  The Plaintiff himself states the force was used against him for attempting to call his attorney.  (Dkt. No. 24 ¶27.)  The Plaintiff has failed to identify any other similarly situated individuals that were treated differently than he was.  Additionally, he has failed to put forth any evidence that shows any unequal treatment was the result of intentional or purposeful

---

[13] To the extent the Plaintiff attempts to make a First Amendment claim under §1983, the same reasoning applies.  Additionally, this court finds the Plaintiff fails to plead a First Amendment claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

discrimination. No genuine dispute of material fact exists as to the Plaintiff's equal protection claims, and this court recommends the Defendants' Motion for Summary Judgment be granted as a matter of law.

### 3. Excessive Force Claim

The Plaintiff claims the Defendants violated his Eighth Amendment right to be free from "cruel and unusual punishments" by the use of excessive force against him. U.S. CONST. amend. VIII. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." [14]   Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The inmate must show that the "prison official acted with a sufficiently culpable state of mind (subjective component); and the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Williams, 77 F.3d at 761). To satisfy the subjective component, a plaintiff must show that "the measure taken inflicted unnecessary and wanton pain and suffering" by showing the force was applied "maliciously and sadistically for the very purpose of causing harm" as opposed to "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986) (internal quotation marks omitted). To determine if the actions were taken "maliciously or sadistically for the very purpose of causing harm" the court must weigh (1) the necessity of the force; (2) "the relationship between the need and the amount of force"; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates

---

[14] "Although an involuntarily committed patient of a state hospital is not a prisoner *per se*, his confinement is subject to the same safety and security concerns as that of a prisoner." Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004).

as reasonably perceived by the responsible officials on the basis of the facts known to them." Id. at 321.

The Plaintiff brings his excessive force claims against Defendants Williams and Washington for applying the force and against Defendant Lindsey for ordering the force be applied. (Dkt. No. 24.) The Plaintiff has failed to present any evidence that the force used against him was done maliciously and sadistically for the very purpose of causing harm. Weighing the Whitley factors, the court finds the force was necessary because the Plaintiff was using phone without authorization after the officers asked him to hang up the phone and get on the ground, and the Defendants attempted to handcuff him before any physical force was used; the force was necessary to gain compliance and was reasonable in that the Defendants took the Plaintiff to the ground to restrain him and then took no further actions; other than the Plaintiff's allegations in the complaint of head trauma, there is no evidence of any injury to the Plaintiff in the record which includes his medical records following the incident; when the Plaintiff held onto the handcuffs before any force was used against him, it was reasonable for the Defendants to perceive the Plaintiff was physically resisting them and to use force in restraining him. The force ended as soon as he was on the floor and restrained. Officers with sadistic or malicious intent would not have stopped with the minimum amount of force necessary to gain compliance.

The force used against the Plaintiff was not "cruel and unusual." The Plaintiff uses emotional, inflammatory language to describe that he was "slam[ed] and pinned to the concert [sic] floor." (Dkt. No. 24 ¶ 28.) However, the record is undisputed that he was on phone and did not get off the phone when he was asked, and he then held onto the handcuffs when the Defendants attempted to restrain him. (Dkt. No. 61.) The Plaintiff argues in his Objection to Summary Judgment that he did not act violent towards the officers so they could not use any

14

force against him. (Id.) The law does not require that the Plaintiff must act with violence before officers may restrain him. No reasonable jury could find the Plaintiff is entitled to a judgment in regards to his excessive force claim, and the Defendants are entitled summary judgment as a matter of law.

### 4. Access to Courts

The Plaintiff claims that the loss of a portion of his legal documents and being restricted in his choice of envelopes amounts to a claim for loss of access to the court system. As the Supreme Court stated in Bounds v. Smith, 430 U.S. 817, 828 (1977), "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, in order to succeed on any access-to-the-courts claim, a prisoner is required to show actual prejudice to his litigation. Lewis v. Casey, 518 U.S. 343, 349 (1996); see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). A prisoner can satisfy this requirement by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. In asserting a claim for denial of access to the courts, "a prisoner cannot rely on conclusory allegations. Specificity is necessary . . . ." Cochran, 73 F.3d at 1317 (citing White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989)).

In the case at bar, there is no evidence of any actual injury from the Plaintiff losing some of his legal documents and being restricted as to what envelope size he is allowed. The Plaintiff has timely filed several filings in this lawsuit which are researched with many legal citations. The Plaintiff has not shown any injury in this lawsuit or any other that resulted from his loss of legal paperwork. As there is no genuine issue of material fact, this court recommends the

15

Defendants' Motion for Summary Judgment as to the Plaintiff's access to courts claims be granted.

### 5. Retaliation, Racial Profiling and Infliction of Emotional Distress Claims

In his Second Amended Complaint, the Plaintiff repeatedly makes general, conclusory claims that the actions taken against him were in retaliation for his race and religious beliefs, that he is being racially profiled, and that he has suffered emotional distress. None of these claims are pleaded to a sufficient standard to establish a claim against any defendants. FED. R. CIV. P. 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss. Id. "The complaint must provide enough specificity to 'give the defendant fair notice of what the plaintiff's claim is.'" Pringle v. City of Charleston Police Dep't, No. C/A 2:06-cv-3295-PMD, 2007 WL 295629, at *5 (D.S.C. Jan. 29, 2007) (quoting Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, (1993) (internal quotation omitted)). The Plaintiff's claims are not sufficient to provide notice of any actual claims against any Defendants. They are little more than conclusory statements and legal buzzwords. Therefore as to these claims, the court recommends the Defendants' Motion for Summary Judgment be granted.

### 6. The Eleventh Amendment

The Eleventh Amendment provides: "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state." U.S.

Const. amend. XI.  In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  As the Supreme Court stated in Will, §1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.  Id. at 66 (citation omitted).  Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself." Id. at 71. However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991) (("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); see also Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001) (overruled in part on other grounds by Nevada Dep't. of Human Resources v. Hibbs, 538 U.S. 721 (2003)).  To the extent Plaintiff brings claims against Defendant Richardson in his official capacity, those claims are barred by the Eleventh Amendment. See Will, 491 U.S. 58; see also Hafer, 502 U.S. 21.  In the case at bar, the Plaintiff is suing all of the Defendants in their official capacities.  (Dkt. No. 24 ¶¶ 2-7.)  The Defendants have not waived their Eleventh Amendment immunity.  As to the Plaintiff's claims against the Defendants in their official capacities, the court recommends the Defendants' Motion for Summary Judgment be granted.

### 7. Respondeat Superior

Defendants Scaturo, Helff, and Jacobs are named in this lawsuit because they are supervisors. The doctrines of vicarious liability and *respondeat superior* are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977). "Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted); see also Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). The Plaintiff does not make any claims these Defendants personally infringed on his constitutional rights or federal statutory rights. The record does not contain any facts to satisfy Slakan and establish liability against any of these Defendants. Therefore, as to Defendants Scaturo, Helff, and Jacobs, this

court find there is no genuine dispute of material fact and recommends the Defendants' Motion for Summary Judgment be granted.

## Conclusion

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 50) be GRANTED.

IT IS SO RECOMMENDED.

*[signature]*
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 9, 2015

Charleston, South Carolina

*Parties' attention is directed to the information on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).